<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP L.S.,[1]<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 24cv8559 (EP)<br><br>**OPINION** |

**PADIN**, **District Judge.**

Philip L.S., who suffers from various physical and mental impairments, appeals from the Social Security Administration's ("SSA") denial of disability insurance benefits ("DIB") pursuant to the Social Security Act, 42 U.S.C. §§ 401-31 (the "Act"). D.E. 1. The Court has considered the parties' submissions and decides Philip's appeal without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons below, the Court will **GRANT** the appeal, **VACATE** the denial, and **REMAND** for further proceedings consistent with this Opinion.

I.   BACKGROUND

   A.   Factual Background

P.L. Philip was born in 1964 D.E. 4 ("R.") at 401. Philip has completed two years of college but has not completed further education. *Id.* at 405. Philip was previously employed as an accounts receivable clerk and collections supervisor, a job he held from November 2006 until

---

[1] To protect the privacy interests of plaintiffs in social security cases, the Court adopts the recommendation of the Judicial Conference of the United States to refer to plaintiffs in social security cases by their first name and last initial. *Veronica D. v. Comm'r of Soc. Sec.*, No. 24-1326, 2025 WL 2665313, at *8 (M.D. Pa. Sept. 17, 2025).

September 16, 2020. *Id.* at 404-405, 424, 576. On September 16, 2020, however, Philip states he suffered a mental breakdown, although it was not his first that year. *Id.*

After his September 16, 2020 mental breakdown, Philip began care at a psychiatric center, where his care was supervised by a nurse, Rafeal Contreras, and a therapist, Ryan Crowley-Hughes. *See id.* at 248, 566. Philip participated in about four weeks of an intensive outpatient program between November 2020 and December 2020, partial hospitalization from December 2020 through February 2021, and intensive outpatient care again until April 2021. *Id.* at 606. Philip continued to receive regular care at this psychiatric center through at least April 2023. *Id.* at 566-633, 788-807, 961-69. Contreras and Crowley-Hughes diagnosed Philip with major depressive disorder, social phobia, and panic disorder. *Id.* at 591.

Crowley-Hughes submitted a medical opinion concluding that Philip faced several limitations in completing basic activities, such as interacting with others, dealing with work stress, performing at a consistent pace without unreasonable rest periods, maintaining appointments outside of medical ones, and avoiding panic attacks. *Id.* at 966-67. Crowley-Hughes's medical opinion was based on the years of treatment he provided Philip.

Philip also maintained appointments with his long-time therapist, Lisa Labrunda, who he has seen since about 2013. *See id.* at 248, 576. LaBrunda diagnosed Philip with recurring major depressive disorder and saw him about once a week. *See, e.g.*, *id.* at 248, 814.

Philip also saw Dr. Horn and Dr. Flowers at Skylands Medical Group for knee pain and back pain. *Id.* at 642. During one visit there, Philip broke down crying. *Id.* at 548. Dr. Horn diagnosed Philip with, *inter alia*, osteoarthritis in both his knees, generalized muscle weakness, arthralgia of multiple joints, panic disorder, chronic anxiety, and major depressive disorder. *Id.* at 644, 655. Philip received cortisone injections to help with his knee pain. *Id.* at 643. Philip also

received physical therapy to treat his knee pain and back pain. *Id.* at 706. Philip's physical therapist diagnosed Philip with knee osteoarthritis and lumbar radiculopathy, and documented Philip's difficulty bending, lifting, and crunching and recommended him as a good candidate for occupational therapy. *Id.*

### B.  Procedural Background

On September 20, 2021, Philip filed an application for DIB. *Id.* at 18. His application alleged that since September 16, 2020, he has been unable to work due to severe anxiety disorder, major depressive disorder, and panic attacks. *Id.* at 404. The SSA initially denied Philip's applications on February 18, 2022, and again upon reconsideration on August 12, 2022. *Id.* at 18. Philip then requested a hearing, which Administrative Law Judge ("ALJ") John Benson conducted on May 12, 2023 (the "Hearing"). *Id.* at 18, 28. The ALJ issued an unfavorable decision on October 3, 2023. *Id.* at 15.

Philip appealed the ALJ's decision to the SSA Appeals Counsel, which denied review on June 24, 2024. *Id.* at 1-7. Philip filed this appeal on November 1, 2024. Compl. Philip's brief followed. D.E. 9 ("Br."). The Commissioner of the SSA opposes. D.E. 11. Philip replies. D.E. 12.

### C.  The ALJ's Decision

To qualify for DIB, a claimant must show he is disabled within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E). Disability is the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The medically determinable impairment must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. *Id.* § 423(d)(2)(A).

The ALJ followed the five-step sequential evaluation procedure for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). Claimants bear the burden of proof at steps one through four while the Commissioner bears the burden of proof at step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Here, the ALJ found that Philip had not engaged in substantial gainful activity since his mental breakdown on September 16, 2020. R. at 20.

At step two, the ALJ decides whether the claimant has a "severe impairment" or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Philip suffered from the following severe impairments: anxiety disorder, depressive disorder, and alcoholic use disorder. R. at 20. The ALJ also determined that Philip suffered from osteoarthritis and lumbar radiculopathy but did not consider those to be severe impairments. *Id.*

At step three, the ALJ decides whether the claimant's impairments meet or equal the severity of an impairment in the Listing of Impairments found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, the claimant is presumed to be disabled if the impairment(s) has lasted or is expected to last for a continuous period of at least twelve months. *Id.* § 404.1509. Otherwise, the ALJ proceeds to step four. Here, the ALJ found that Philip did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. R. at 21-23. The ALJ instead found that Philip's mental impairments posed moderate and mild limitations, not severe ones. *Id.*

At step four, the ALJ must determine what the claimant's residual functional capacity ("RFC") is and whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the claimant is unable to perform past relevant work, the ALJ proceeds to step five. Here, the ALJ found that Philip could not perform his past relevant work and that he had the RFC to perform work at all exertional levels with the following limitations: "he cannot interact with the public, he may not perform team or tandem tasks, he can tolerate occasional interaction with coworkers, and he can tolerate frequent interaction with supervisors." R. at 23-27. This finding was based on the ALJ's conclusion that Philip "would have difficulty functioning in work that is stressful, complex, or may result in agitation. Therefore, the claimant is limited to performing only simple tasks with no interaction with the public and limited interaction with coworkers." *Id.* at 27.

At step five, the ALJ must determine whether the claimant can perform other substantial gainful work which exists in the national economy. 20 C.F.R. § 404.1520(g). ALJs usually make this determination with the assistance of vocational expert ("VE") testimony. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019). VE examination "typically involves 'one or more hypothetical questions posed by the ALJ to [a] vocational expert.'" *Id.* (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). The ALJ's questions to the VE, however, must accurately reflect the claimant's impairments. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). The VE will then provide testimony regarding whether, given the claimant's physical capabilities, he can perform certain jobs listed in the Dictionary of Occupational Titles ("DOT"). *See Maria B. v. Kijakazi*, No. 21-20090, 2022 WL 17733680, at *2 (D.N.J. Dec. 16, 2022). If the claimant is unable to perform those jobs, he is presumed to be disabled if his impairments have lasted or can

be expected to last over a continuous period of at least twelve months. *N.M. v. Comm'r of Soc. Sec.*, No. 23-1093, 2024 WL 1006288, at *2 (D.N.J. Mar. 8, 2024).

Here, the ALJ considered which jobs Philip would be able to perform, given his non-exertional limitations. R. at 27-28. At the Hearing, the VE testified that given Philip's limitations, he would be able to perform the requirements of a laboratory equipment cleaner (DOT 381.687-022), a kitchen helper (DOT 318.687-010), and a router (DOT 322.687-022). *Id.* at 28. The ALJ agreed after considering the record to be consistent with the VE's conclusions. *Id.* Accordingly, the ALJ concluded that Philip was not disabled within the meaning of the Act. *Id.*

## II.    LEGAL STANDARD

Judicial review of an SSA determination is based upon the pleadings and the transcript of the record. The scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the ALJ's findings of fact. *See* 42 U.S.C. § 405(g) ("The findings . . . as to any fact, *if supported by substantial evidence*, shall be conclusive." (emphasis added)); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) ("[W]e have plenary review of all legal issues . . . and review the ALJ's findings of fact to determine whether they are supported by substantial evidence.").

"Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). A "single piece of evidence," however, "will not satisfy the substantiality test if the Commissioner ignores, or fails to resolve, a conflict created by countervailing evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

If faced with conflicting evidence in the Record, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." *Kirby v. Comm'r of Soc. Sec.*, No. 16-5159, 2017 WL 4330361, at *5 (D.N.J. Sept. 29, 2017) (quoting *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987)). The Court must determine "whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision." *Dunster v. Dudek*, No. 24-469, 2025 WL 622333, at *4 (M.D. Pa. Feb. 26, 2025) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)). An ALJ's finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions with conclusory findings or which indicate the ALJ failed to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. And the Court must also ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

### III. REVIEW OF THE ALJ'S OPINION

Philip contends that the ALJ erred by failing to characterize Philip's knee impairment and lumbar radiculopathy at step two and by then failing to consider those impairments in his analysis of Philip's RFC at step four. Br. at 12-13. Philip also contends that the ALJ further erred at step four by cherry picking the medical record to discount both Philip's and his treating physician's conclusions. Br. at 15-18. The Court agrees that the ALJ's findings at step two and step four were not supported by substantial evidence. The Court addresses Philip's arguments below.

### A. The ALJ Did Not Adequately Consider Philip's Lumbar Radiculopathy and Knee Osteoarthritis

At step two, the ALJ determines whether the claimant has any medically severe impairments. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). An ALJ may find

7

no severity only if the evidence presented establishes no more than "a slight abnormality or combination of slight abnormality" that does not limit basic work activities. *Id.* at 546 (emphasis added) (citing Social Security Ruling 85-28 SSR LEXIS 19, at *6-7; and then *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)). Basic work activities include, but are not limited to, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522(b)(1).

"[T]he standard for demonstrating severity under step two is a forgiving one." *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 107 (3d Cir. 2007). It functions to "eliminate spurious claims of disability and therefore a plaintiff's burden to establish the severity of an impairment under step two is not demanding." *Id.* So long as a claimant establishes more than a "'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Id.* (quoting *Newell*, 347 F.3d at 546).

Here, the ALJ improperly disregarded Philip's lumbar radiculopathy and knee osteoarthritis. R. at 706, 765. Although the ALJ acknowledged that Philip's medical record demonstrated "tenderness in his lumbar spine and knees," the ALJ nevertheless found his impairments non-severe based upon Philip's "positive response to treatment," apparent "normal strength," and because Philip practices martial arts.[2] R. at 20-21. This finding improperly disregarded Philip's physical limitations documented in the medical record and described during testimony at the Hearing. For example, in January 2023, Philip's physical therapist noted that he

---

[2] The ALJ's Opinion does not appear to reject Philip's lumbar radiculopathy and knee osteoarthritis as non-severe based upon his engagement in martial arts but the Commissioner contends that he did. Opp'n at 16. However, it is not clear that Philip even continues to practice martial arts. *See* R. 246 ("I used to love martial arts. I don't really do hobbies like I really don't have interest in them."). Regardless of whether Philip does or not, the Court cautions that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981).

"cont[inued] to demonstrate decr[eased] posterior chain activation, especially when lifting from floor to waist height, with increased lumbar flex requiring cuing for improvement in glute activation and core stability." R. at 706. Philip's physical therapist further noted that his mobility remained "limited" and Philip's lower back pain following lifting, bending, and crunching. *Id.* These limitations plainly impact Philip's ability to engage in basic work activities. *See* 20 C.F.R. § 404.1522(b)(1).

Other portions of Philip's medical record also indicate that Philip's range of motion was limited due to pain is his back and knees, including after attempting to practice martial arts. R. at 507 (documenting in May 2021, Philip's "long-standing pain" in lower back which worsens after physical activity like martial arts and after sitting); *id.* at 643 (documenting in January 2022, pain and stiffness in his knees and shoulders, and Philip's frustration that as "a martial arts expert [he] cannot do what he used to"); *id.* at 667 (documenting on May 17, 2022, tenderness in Philip's lumbar region and limited range of motion in his knee due to pain); *id.* at 739 (documenting on December 15, 2022, pain and tenderness in knees). These medical records confirm that Philip's ability to physically exert himself and perform basic work activities is subject to limitation. Finally, Philip also testified that he sometimes experiences back spasms where he feels like he cannot stand. *Id.* at 251-52. Although Philip testified that his back spasms occur only a few times a week, a limitation on Philip's ability to stand is also significant. *See* 20 C.F.R. § 404.1522(b)(1).

While some portions of the medical record suggest Philip's knee and back pain may have fluctuated, the record nevertheless indicates that his lumbar radiculopathy and knee osteoarthritis significantly impacted Philip's ability to engage in basic work activities. Because "[r]easonable doubts on severity are to be resolved in favor of the claimant" at step two, the ALJ erred by

9

declining to characterize Philip's lumbar radiculopathy and knee osteoarthritis as severe impairments. *Newell*, 347 F.3d at 546.

The ALJ's error does not appear harmless. Although an ALJ's failure to consider an impairment severe at step two is typically harmless if the ALJ finds other severe impairments—as the ALJ did here with mental impairments—this case is not a typical one. *See Orr v. Comm'r of Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) (finding error at step two harmless because it "would not alter the remainder of the five-step process, much less the overall outcome"). While the ALJ here found other severe impairments, the ALJ found only mental impairments. *See* R. at 21-27. As a result, at step four, the ALJ did not consider Philip subject to any physical restrictions. *Id.* at 28 (finding Philip able to work "at all exertional levels").

There is, however, yet another problem with the ALJ's step four analysis here with respect to Philip's physical impairments. ALJs must consider all relevant evidence when evaluating a claimant's RFC at step four, *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001), and relevant evidence includes even "impairments that are not 'severe,'" 20 C.F.R. § 404.1545(a)(2) (quoting 20 C.F.R. § 404.1520(c)). Therefore, regardless of the severity determination that the ALJ gave Philip's lumbar radiculopathy and knee osteoarthritis at step two, the ALJ should have still considered those impairments and evaluated the extent to which they impacted his RFC at step four.

The ALJ's analysis is accordingly deficient. The Court will therefore **VACATE** the ALJ's decision for failure to consider Philip's lumbar radiculopathy and knee osteoarthritis and **REMAND** for further consideration of Philip's physical impairments.

> **B.** **The ALJ Did Not Adequately Consider Philip's Ability to Show Up For Work**

At step four, the ALJ found the medical opinion of Philip's treating physician, Crowley-Hughes, unpersuasive. R. at 26. In disregarding his medical opinion, the ALJ discredited

Crowley-Hughes's conclusion that Philip would struggle to maintain competitive employment at least in part because he would likely miss more than four days of work a month. *Id.* The ALJ's rejection of this conclusion, however, rests on impermissible foundations.[3] *See Plummer*, 186 F.3d at 429 (explaining that an ALJ "cannot reject evidence for no reason or for the wrong reason" (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993))).

*First*, the ALJ concluded that because Crowley-Hughes had himself never witnessed Philip's regular panic attacks, his conclusion that Philip's panic attacks would preclude regular attendance at work could not be credited. R. at 27. A treating physician's medical opinion that relies on subjective complaints, however, "should not necessarily be undermined when the alleged impairment is of the type that by its very nature is self-reported." *Hall v. Astrue*, 882 F. Supp. 2d 732, 740 (D. Del. 2012) (citing *Morris v. Barnhart*, 78 F. App'x 820, 825 (3d Cir. 2003)). Because Philip's panic attacks are a type of impairment that by their nature are typically self-reported, the ALJ was not free to discount Crowley-Hughes's medical opinion without also providing "appropriate reasons for disbelieving [Philip's] subjective complaints to discount [his treating physician]'s opinion." *See id.* Moreover, Crowley-Hughes's medical opinion regarding Philip's panic attacks was consistent with other parts of the record. *See, e.g.*, *id.* at 548 (Dr. Horn's September 2020 notes documenting Philip's panic attack that morning, his crying during the physical exam, and his complaint that he "nearly [had a] nervous breakdown"); *id.* at 822 (LaBruda's September 2021 notes documenting that Philip "appeared to be in crisis for the previous two sessions"); *id.* at 912 (LaBruda's September 2022 notes documenting in Philip's

---

[3] Philip also argues that the ALJ impermissibly cherrypicked his medical record. Br. at 20. The Court agrees that it is improper to consider only evidence that supports any particular position. To the extent that the ALJ failed to properly account for all of Philip's evidence, the Court makes note, in this section, of evidence that the ALJ improperly ignored.

difficulty "getting out of bed" and how he "becomes overwhelmed then feels frozen").  An ALJ, however, may reject a treating physician's opinion "'only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation, or lay opinion." *Morales*, 225 F.3d at 317-18 (quoting *Plummer*, 186 F.3d at 429).  Because the ALJ provides no basis for disbelieving Philip's self-reporting of his panic attacks, nor identifies any contradictory medical evidence, the ALJ's rejection of Crowley-Hughes's conclusion that Philip's panic attacks would preclude regular attendance at work was not supported by substantial evidence.

*Second*, the ALJ also concluded that because Philip regularly kept his medical appointments with Crowley-Hughes, he would be able to keep attendance at a job with regular hours.  R. at 26.  Keeping a brief weekly appointment with a physician, however, does not contradict Crowley-Hughes's medical opinion that Philip struggles to maintain regular appointments outside of therapy.  *Compare Scheuren v. Kijakazi*, No. 20-1189, 2021 WL 6285274, at *10 (M.D. Pa. Nov. 24, 2021) (finding that a treating physician's opinion based on the claimant's occasional cooking, cleaning, shopping, interacting with the claimant's children, and attending therapy did not contradict the treating physician's opinion that the claimant could not interact with others at work on a daily basis), *with Stancavage v. Saul*, 469 F. Supp. 3d 311, 333 (M.D. Pa. 2020) (finding that the claimant's ability to attend college classes full-time contradicted the claimant's contention that she struggled to leave her home).

Nor is the medical record devoid of evidence, as the ALJ contends, that Philip struggled to maintain engagements outside of his medical ones.  R. at 26.  The notes from Philip's visits with LaBrunda, the therapist he saw for over a decade, corroborate Philip's struggles to maintain a schedule outside of his medical appointments.  *See, e.g.*, *id.* at 835 (November 2021 notes discussing ways to help get Philip "out of the house"); *id.* at 839 (December 2021 notes

12

documenting that Philip "was able to get out of the house a few times this week" but that he was also "leaving Eagle Martial Arts"); *id.* at 870 (March 2022 notes documenting Philip's refusal "to go on vacation with [his wife] during the Easter week" and that he seemed poised to "give up on" a training course); *id.* at 880, 884 (May 2022 notes recording how Philip was "still struggling to keep a schedule at the gym, which he had at one time made a priority" and that while Sintra "has intentions to attend boxing more frequently, he doesn't seem able to get there more than once a week"); *id.* at 886 (June 2022 notes documenting Philip's "hard time even getting himself to the gym"). Accordingly, the ALJ's rejection of Crowley-Hughes's medical opinion based upon the alleged dearth of other medical evidence supporting his conclusion was improper.

For at least the above two errors, the ALJ's analysis regarding Philip's RFC and ability to show up for work was not supported by substantial evidence. This error is of particular relevance because the VE testified that "tolerance for absenteeism" was normally limited to "no more than one unscheduled absence per month on the average and this would include being unable to complete a work shift, either arriving particularly late or leaving the facility." R. at 255. Accordingly, the Court will **VACATE** the ALJ's decision for its improperly explained rejection of Philip's panic attacks and inability to show up work and **REMAND** for further consideration to determine whether his impairments would preclude him from maintaining attendance at work.

13

## IV.     CONCLUSION

Based on the foregoing, the Court will **GRANT** Philip's appeal, **VACATE** the ALJ's denial of benefits, and **REMAND** to the SSA for further consideration. Accordingly, the Court remands this matter to the Commissioner for proceedings consistent with the Order.


Dated:     December 23, 2025

/s/ Evelyn Padin
_____
Evelyn Padin, U.S.D.J.